UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

RAYMOND E. KIRKENDALL, II,

       Plaintiff,

v.

UNKNOWN CONKLIN et al.,

       Defendants.
_____/

Case No. 1:18-cv-480

Honorable Janet T. Neff

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.  On May 15, 2018, the Court dismissed all defendants but Defendant Conklin and ordered service of the complaint on Defendant Conklin.  Before the Court is Plaintiff's motion to amend the complaint (ECF No. 10), motion for appointment of counsel (ECF No. 12), and motion to amend/correct the case caption (ECF No. 20).  For the reasons stated herein, the motion to amend the complaint will be granted and the motions for appointment of counsel and for amendment of the case caption will be denied.  In addition, after review of the amended complaint, the Court will dismiss Defendants Davis, Haynes, Maxim, Miranka, Jensen, Wells, Burns, Kassa, Moull, Hicks, Perry, Sherwood, Stanbaugh, Mott, Fralick, Jex, Smith, Christiansen, and Miniard for failure to state a claim.

    I.    <u>Motion to Amend the Complaint</u>

Rule 15 permits a party to amend pleading once as a matter of course within 21 days after service of a responsive pleading.  Fed. R. Civ. P. 15(a)(1).  No responsive pleading has been filed in this case.  Consequently, Plaintiff is permitted to amend his complaint without

permission from the Court. Accordingly, the Court will treat Plaintiff's proposed amended complaint (ECF No. 11-1) as the operative complaint in this action.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

II. Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Michigan. Plaintiff sues the following MDOC employees at ICF: Warden Willie Smith; Deputy Warden John Christiansen; Resident Unit Manager (RUM) (unknown) Davis; Sergeants (unknown) Conklin, (unknown) Kerr, (unknown) Greenfield, and (unknown) Moull; Corrections Officers (unknown) Maxim, (unknown) Conner, (unknown) Martens, (unknown) Walker, (unknown) Jensen, (unknown) Burns, (unknown) Wells, (unknown) Kassa, (unknown) Hicks, (unknown) Perry, (unknown) Sherwood, (unknown) Stanbaugh, (unknown) Mott, (unknown) Fralick, Dewey Watkins, and (unknown) Jex; Prisoner Counselors Heather Powell and (unknown) Haynes; Unit Chief (unknown) Miranka; and Inspector (unknown) Miniard.

Plaintiff alleges that on January 24, 2018, Defendant Maxim came to Plaintiff's cell, threw Plaintiff's mail on the floor, opened Plaintiff's cell door, and stood facing Plaintiff with his hands "balled up" as if he was "ready to fight." (Am. Compl., ECF No. 11-1, PageID.84.)

Maxim told Plaintiff to come out of his cell for a shakedown. Plaintiff refused to do so because he was worried that his property would be damaged or that he would be falsely accused of misconduct, as had happened to him in the past. Plaintiff asked to speak with the sergeant because he did not feel safe. Maxim cursed at him. Plaintiff went to the back of his cell. Plaintiff again asked to speak with a sergeant. Maxim cursed at him and stated "Okay . . . you want to play games, let's play." (*Id.*) Maxim issued Plaintiff a misconduct for disobeying a direct order. Plaintiff alleges that the misconduct ticket contained many false accusations about what Plaintiff said and did.

As a result of the misconduct, Sgt. Conklin removed Plaintiff from the "START mental health program" and placed him in another unit. (*Id.*, PageID.85.) Plaintiff complained about Maxim's conduct, but Conklin stated, "Enjoy your stay, for it's going to be a hard one." (*Id.*) That same day, an officer refused to provide Plaintiff his lunch tray, and another officer refused to provide a dinner tray. Plaintiff complained about this to Sgt. Kerr when she was doing rounds, but she told him, "Well, Kirkendall, you just don't have shit coming. It's what happens when you act out and staff have to work." (*Id.*, PageID.85-86.)

On January 25, another officer refused to provide Plaintiff his breakfast tray, telling Plaintiff, "I don't feed fuckboys." (*Id.*, PageID.86.) Plaintiff told Defendants Greenfield and Powell about these issues, but they dismissed his concerns.

On January 26, another officer denied Plaintiff his breakfast. Plaintiff became angry, so he threw water under his cell door and put a wet tissue through a hole over the top of the door. According to Plaintiff, rust on the cell door made it appear that the water contained feces.

Sgt. Conklin came to Plaintiff's cell. Plaintiff complained that officers had been denying him food for 24 hours. Conklin told him, "So what? . . . you don't got anything coming over here, so stop your bullshit." (*Id.*) Plaintiff asked for the lieutenant. Conklin refused.

Plaintiff alleges that Conklin and ICF "supervisory staff" are known for using chemical spray on prisoners without reason. (*Id.*) Conklin left and returned with four officers in riot gear, telling Plaintiff to show his hands. Plaintiff complied and turned his back to the cell door, bent forward, and put his arms out of the slot in the cell door. Conklin sprayed Plaintiff on the back, buttocks, legs, arms, and hands, and two officers held Plaintiff at the cell door for 45 seconds while he was forced to breathe the chemical spray. Conklin then falsely charged Plaintiff with threatening behavior.

The officers put Plaintiff in restraints, using handcuffs that were so tight that they cut into his skin and cut off his circulation. Then they took him to a shower stall and told him to take a shower, but Plaintiff alleges that it was a hot shower, and the hot water would have exacerbated the burning feeling on his skin, so he refused. Officers then put Plaintiff in a restraint chair. He contends that the restraints were so tight that they cut off the circulation in his legs. They left him in the chair for about 2 hours. Every 15 minutes, officers checked on him, including Defendants Greenfield, Conner, Martens and Walker. He complained that he was in severe pain and discomfort, but they did not allow him to take a restroom break, or to be checked by a nurse, so he defecated on himself.

On February 28, an unknown officer gave Plaintiff a supposedly kosher/vegan food tray with a block of cheese on it. The officer said to Plaintiff, "Don't rats love cheese?" (*Id.*, PageID.89.) Defendant Watkins later walked by Plaintiff's cell and said, "Did you enjoy your

cheese, rat?" (*Id.*) Watkins' question could be heard by other prisoners. Plaintiff asserts that Watkins' comment put Plaintiff at risk of harm from other prisoners.

The next day, Plaintiff's mother spoke with Prisoner Counselor Powell on the telephone about Plaintiff's alleged mistreatment by other officers. Powell allegedly told Plaintiff's mother that Plaintiff was not telling the truth, and that Plaintiff was in "lock-up" because he was having problems. Plaintiff asserts that Powell "invade[d] [Plaintiff's] privacy in retaliation." (*Id.*)

On April 26, when officers were moving prisoners out of their cells for maintenance work, Sgt. Conklin allegedly stopped by Plaintiff's cell and stated, "Well, Kirkendall, looks as if I'll be able to gas you once again when we have to move you so maintenance can fix your back window." (*Id.*) Plaintiff questioned him about this, and Conklin responded, "You will soon find out and then you can go write the courts and cry to them." (*Id.*)

Plaintiff contends that there has been an "extensive retaliatory campaign" against him, because is "openly a bisexual male with long hair and sometimes effeminate voice[, which] places him at risk of harassment and attack by officers and other prisoners." (*Id.*, PageID.89-90.) He contends that defendants Greenfield, Maxim, Conner, Martens, Walker, Jensen, Wells, Burns, Kassa, Moull, Hicks, Perry, Sherwood, Stanbaugh, Mott, Fralick, Watkins, and Jex frequently made "sexually derogatory, demeaning, humiliating, or threatening" comments to Plaintiff, and have threatened to "place a 'hit' on him by telling other prisoners that [Plaintiff is] convicted of CSC, a rat, a homosexual, or has disrespected their gang[.]" (*Id.*, PageID.90.) Also, Defendant Haynes allegedly discarded Plaintiff's "PREA grievances," and RUM Davis "condoned" this conduct. (*Id.*)

In addition, Plaintiff alleges that Defendants Conner, Jensen, Burns, Hicks, Perry, Fralick, Watkins, and Jex have "retaliated" against Plaintiff by denying him showers for "weeks,

5

even months, and denying L.O.P. out-of-cell yard breaks to skip over him, saying the 6 yard cages are full, to leave him in his cell 24/7." (*Id.*) They did this while making "scornful" comments about Plaintiff's "protected conduct." (*Id.*)

Plaintiff further contends that Defendants Smith, Christiansen, Miniard, and Davis have a "policy and custom" of "deliberate indifference to numerous reports, complaints, and grievances by prisoners . . . of frequent officer misconduct and retaliation." (*Id.*)

Plaintiff also alleges that he asked for Defendant Miranka's help reporting and investigating misconduct by other officers, but Miranka refused Plaintiff's request.

Based on the foregoing, Plaintiff claims that Defendants have violated his rights under the Eighth Amendment, retaliated against him in violation of the First Amendment, deprived him of his right to privacy under the Fourth Amendment, and committed various torts under state law, including: invasion of privacy, placing him in a false light, assault, battery, gross negligence, and intentional infliction of emotional distress.

As relief, Plaintiff seeks a declaratory judgment, a permanent injunction, and compensatory and punitive damages.

III.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough

facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Eighth Amendment

Plaintiff contends that defendants have violated his rights under the Eighth Amendment.  The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345-

46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). Where a prisoner alleges a deprivation of some kind, the deprivation must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

1. Chemical spray and restraints

Defendant Conklin allegedly sprayed Plaintiff with chemical spray and Defendants Greenfield, Conner, Martens, and Walker allegedly failed to respond to Plaintiff's complaints while he was being held in a restraint chair. The Court finds that these allegations are sufficient to state an Eighth Amendment claim against Defendants Conklin, Greenfield, Conner, Martens, and Walker.

2. Calling Plaintiff a "rat."

Defendant Watkins allegedly called Plaintiff a rat in front of other prisoners, stating, "Did you enjoy your cheese, rat?" Plaintiff alleges that this comment put him at risk of harm from other prisoners. These allegations are sufficient to state an Eighth Amendment claim against Watkins.

8

3. Verbal harassment

Plaintiff alleges that on January 24, 2018, Defendant Maxim antagonized Plaintiff, cursing at him, calling him names, and standing in front of Plaintiff's cell in a stance looking like he was ready to fight. Allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 954-55; *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim). Accordingly, Maxim's actions do not give rise to an Eighth Amendment claim, or any other claim, under § 1983.

4. Food trays

Plaintiff allegedly complained to Defendant Kerr about the fact that he had not received two food trays on January 24, and to Defendants Greenfield and Powell after he was denied a third tray on January 25, but none of them took any action to correct the issue.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

The deprivation of a few meals for a limited time generally does not rise to the level of a constitutional violation. *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per

9

curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (denial of five meals over three days). Plaintiff does not allege that he faced a significant risk of harm from being denied three food trays, or that Defendants were aware of such a risk. Thus, he does not state an Eighth Amendment claim against Defendants Kerr, Greenfield, or Powell with regard to the denial of food trays.

### B. Retaliation

Throughout his complaint, Plaintiff alleges that Defendants retaliated against him. For instance, Defendant Conklin allegedly told Plaintiff that his stay in Unit 2 would be a "hard one" in "retaliation" for Plaintiff's verbal complaints. (Am. Compl., PageID.85.) Defendant Watkins allegedly called Plaintiff a "rat" in retaliation for Plaintiff's complaints and grievances against prison staff. (*Id.*, PageID.89.) Defendant Powell allegedly lied to Plaintiff's mother "in retaliation." (*Id.*) Plaintiff also broadly asserts that all Defendants retaliated against him "for his exercise of constitutionally protected rights." (*Id.*, PageID.92.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must allege facts to establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the

defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Plaintiff's retaliation claims are conclusory. He fails to support them with any facts about his protected conduct. He merely asserts that he complained about some issues on various occasions and that he is a "well known complainer and frequent grievance filer." (Am. Compl., PageID. 91.) However, Plaintiff's reputation is not protected conduct, and there are no allegations from which to infer that Defendants' actions were motivated by any specific conduct by Plaintiff. Accordingly, Plaintiff fails to state a retaliation claim.

### C. Misconduct Report (Maxim)

Defendant Maxim allegedly filed a misconduct report against Plaintiff containing false allegations. This does not state a claim. Plaintiff does not plausibly allege that Maxim issued the report in retaliation for Plaintiff's protected conduct. Indeed, Plaintiff admits that he did not

11

obey Maxim's order to come out of his cell. Thus, Plaintiff does not state a claim against Defendant Maxim for filing a misconduct report charging Plaintiff with disobeying a direct order.[1]

### D.  Privacy / Fourth Amendment

Plaintiff asserts that Defendant Powell deprived him of his rights under the Fourth Amendment. The Fourth Amendment protects against unreasonable searches and seizures. Prisoners have limited privacy rights under the Fourth Amendment. *See Hudson v. Palmer*, 468 U.S. 517, 526 (1984) (holding that "[t]he recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions").

In this case, Plaintiff's Fourth Amendment claim fails because he does not allege a search or a seizure. He merely alleges that Defendant spoke with his mother on the telephone. The Fourth Amendment does not prevent prison officials from speaking with a prisoner's family. Accordingly, Plaintiff does not state a Fourth Amendment claim against Defendant Powell.

### E.  Grievances

Plaintiff alleges that Defendant Haynes discarded his PREA grievances. This does not state a constitutional claim. The Sixth Circuit has held that there is no constitutionally-protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003).

Moreover, Defendant's actions have not barred Plaintiff from seeking a remedy for his grievance. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways

---

[1] The Court will not address Plaintiff's allegation that Defendant Conklin filed a false misconduct report because Plaintiff states a claim against Defendant Conklin for other reasons.

in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415-16 (6th Cir. 2014) (citing *North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his invocation of the judicial process in this matter.

Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file his PREA grievances, and he therefore cannot demonstrate the actual injury required for denial of access to the courts. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001). Accordingly, Defendant Haynes is not liable under § 1983 for discarding the grievances and Defendant Davis is not liable for condoning that conduct.

### F. Supervisory Liability

To the extent Plaintiff alleges that Defendants are liable for the conduct of other officials, or for failing to act in response to Plaintiff's grievances, Plaintiff does not state a claim under § 1983. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at

676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Accordingly, Defendants are not liable for the conduct of other officers, or for failing to respond to Plaintiff's concerns through the grievance process. For similar reasons, Defendant Miranka is not liable for refusing to investigate Plaintiff's concerns.

### G. State Law

Plaintiff asserts several claims under state law. Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Accordingly, Plaintiff's assertion that certain Defendants violated state law does not, in itself, state a claim under § 1983.

### H. Conclusory Allegations

Plaintiff makes a series of other conclusory allegations in his amended complaint. He alleges that several defendants, including Defendants Greenfield, Maxim, Conner, Martens,

Walker, Jensen, Wells, Burns, Kassa, Moull, Hicks, Perry, Sherwood, Stanbaugh, Mott, Fralick, Watkins, and Jex, frequently made humiliating and derogatory remarks about Plaintiff, telling other prisoners that Plaintiff was convicted of criminal sexual conduct, or calling him a "rat" or "homosexual," or telling other prisoners that Plaintiff "disrespected" their gang.  (Am. Compl., PageID.90.)

Plaintiff also alleges that Defendants Conner, Jensen, Burns, Hicks, Perry, Fralick, Watkins, and Jex denied him showers and yard time.  (*Id.*)

In addition, Plaintiff alleges that Defendants Conklin, Kerr, Greenfield, Powell, Haynes, Davis, Smith, Christiansen, Miniard, and Miranka have a "policy or custom of deliberate indifference" to reports, complaints, and grievances by prisoners.  (*Id.*, PageID.92.)

The foregoing allegations are not adequate to state a claim.  It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants.  *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim).  Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.  *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant).

15

Plaintiff's allegations, which attribute a variety of actions to large groups of defendants, do not provide fair notice to the individual Defendants of the particular conduct giving rise to the claims against each of them. There are no specific incidents described in the complaint that would support allegations against such groups of individuals, and it is impossible to discern what facts are being alleged against which Defendant. Moreover, Plaintiff's claims concerning a policy or custom of deliberate indifference are wholly conclusory. Accordingly, for all the reasons mentioned, Plaintiff fails to state a claim under § 1983 against Defendants Davis, Haynes, Maxim, Miranka, Jensen, Wells, Burns, Kassa, Moull, Hicks, Perry, Sherwood, Stanbaugh, Mott, Fralick, Jex, Smith, Christiansen, and Miniard.

    IV.    <u>Supplemental Jurisdiction</u>

For the reasons discussed in the previous Section, Plaintiff does not state a claim under § 1983 against Defendants Davis, Haynes, Maxim, Miranka, Jensen, Wells, Burns, Kassa, Kerr, Moull, Hicks, Perry, Powell, Sherwood, Stanbaugh, Mott, Fralick, Jex, Smith, Christiansen, and Miniard. To the extent Plaintiff asserts a state law claim against any of these defendants, the Court will not exercise supplemental jurisdiction over those claims.

Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits. *See Landefeld v. Marion Gen. Hosp.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *Faughender v. City of N. Olmsted*, 927 F.2d 909, 917 (6th Cir. 1991); *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998). Accordingly, Plaintiff's state law claims against the foregoing defendants will be dismissed without prejudice.

      V.      Motion for Appointment of Counsel

Plaintiff asks for appointment of counsel. Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604-05; *see Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position.

      VI.      Motion to Amend Case Caption

Plaintiff asks the Court to amend the case caption to reflect that his name is Raymond E. Kirkendall, *III*, and not Raymond E. Kirkendall, *II*. For prisoner-plaintiffs, the Court generally uses the name that is in the state's prison records. According to the MDOC's Offender Tracking Information System, Plaintiff's name is Raymond E. Kirkendall, II. The Court has used that name in another of Plaintiff's cases, *see Kirkendall v. Jaramillo et al.*, No. 1:15-cv-1210 (W.D. Mich.), and will continue to do so here, unless and until Plaintiff's MDOC record changes.

## Conclusion

Plaintiff's motion to amend the complaint will be granted. After review of the amended complaint under the Prison Litigation Reform Act, the Court determines that Defendants Davis, Haynes, Maxim, Miranka, Jensen, Wells, Burns, Kassa, Kerr, Moull, Hicks, Perry, Powell,

Sherwood, Stanbaugh, Mott, Fralick, Jex, Smith, Christiansen, and Miniard will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). However, the Court will allow service of the amended complaint against Defendants Conklin, Greenfield, Conner, Martens, Walker, and Watkins. The Court will enter an appropriate order for service of the amended complaint on the remaining Defendants. Plaintiff's motion for appointment of counsel and motion to amend the case caption will be denied.

An Order consistent with this Opinion will be entered.


Dated:   September 5, 2018            /s/ Janet T. Neff
                                      Janet T. Neff
                                      United States District Judge