UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAYMOND KIRKENDALL II #854212,

    Plaintiff,

v.

UNKNOWN CONKLIN, et al.,

    Defendants.

_____/

Hon. Janet T. Neff

Case No. 1:18-cv-480

## REPORT AND RECOMMENDATION

The Court has before it Defendant's Motion for Summary Judgment. (ECF No. 54.) Plaintiff has not responded to the motion. Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be **GRANTED**.

## BACKGROUND

Plaintiff, a prisoner incarcerated with the Michigan Department of Corrections (MDOC), filed a complaint pursuant to 42 U.S.C. § 1983 alleging claims based on events that occurred while Plaintiff was incarcerated at the Ionia Correctional Facility. Plaintiff's only remaining claim is for use of excessive force against Defendant Sergeant Walter Conklin. (ECF Nos. 21, 22, 49, 50.)

On the morning of January 26, 2018, Plaintiff was upset about being denied breakfast and asked an unnamed officer to speak with the sergeant, Defendant Conklin. The officer denied Plaintiff's request. (ECF No. 23 at PageID.153.) In response, Plaintiff began throwing water under his cell door and wet toilet paper through a hole over the top of the door. (*Id.* at PageID.153–54.) Staff reported Plaintiff's disruptive behavior to Defendant Conklin, who went to Plaintiff's cell with Corrections Officer (C/O) Downing to address the situation. When they

arrived, they noticed liquid coming from under Plaintiff's door.  (ECF No. 40-3 at PageID.247.) Defendant Conklin attempted to talk to Plaintiff and ordered him to clean off his window.  (*Id.* at PageID.248.)  Plaintiff refused and threatened to throw urine on anyone who came closer to his door.  Defendant Conklin and C/O Downing ordered Plaintiff to back up to his door to be placed in restraints, but Plaintiff refused to comply and walked away.  (*Id.* at PageID247–48.)

Defendant Conklin and C/O Downing left the cellblock to report Plaintiff's conduct up the chain of command.  Ultimately, Deputy Warden Miniard authorized a response team to remove Plaintiff from his cell and place him in a restraint chair.  Miniard also authorized the use of a chemical agent, if necessary, to control Plaintiff.  (*Id.* at PageID 256–58.)

As the sergeant for Plaintiff's unit, Defendant Conklin led the response team.  (*Id.* at PageID.257.)  After the response team arrived at Plaintiff's cell, Defendant Conklin ordered Plaintiff to remove his jacket several times, but Plaintiff refused.  (ECF No. 40-2 at PageID.236–37.)  Eventually, Conklin sprayed a single burst of chemical agent into Plaintiff's cell.  (ECF No. 55-1 at PageID.357.)  Thereafter, Plaintiff complied and was safely removed from the cell.  (ECF No. 40-3 at PageID.258.)

Following the incident, Defendant Conklin filed a misconduct report charging Plaintiff with engaging in threatening behavior and disobeying a direct order.  (*Id.* at PageID.255.)  The Michigan Department of Licensing and Regulatory Affairs conducted a hearing on the matter on February 6, 2018.  (*Id.* at PageID.247–48.)  The hearing officer received written statements from the parties and viewed a video of the incident.  Plaintiff was also afforded the opportunity to provide testimony about the event.  (*Id.* at PageID.247.)  Based on the evidence, the hearing officer found Plaintiff guilty of the charges.  (*Id.* at PageID.248.)  Plaintiff's request for a

rehearing was denied. (ECF No. 55-3.) Plaintiff did not seek review in state court, as permitted by Mich. Comp. Laws § 791.55.

## DISCUSSION

Generally, where the non-moving party fails to respond to a motion for summary judgment, "the district court must, at a minimum, examine the moving party's motion for summary judgment to ensure that it has discharged its initial burden." *Miller v. Shore Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005) (citing *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998)).

Defendant Conklin argues that summary judgment is proper because he is entitled to qualified immunity. The doctrine of qualified immunity provides that government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999). An "objective legal reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The qualified immunity inquiry requires a court to decide whether the facts as alleged or shown make out a constitutional violation and whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either prong of the inquiry without regard to sequence. *Id.* at 236. Here, the Court can decide the issue of qualified immunity on the first prong of the analysis.

The Sixth Circuit has held that factual findings made during an MDOC misconduct hearing may be given preclusive effect in a subsequent civil rights action under Section 1983. *Maben v.*

3

*Thelen*, 887 F.3d 252 (6th Cir. 2018). Findings are entitled to preclusive effect if: (1) the state agency acted in a judicial capacity; (2) the hearing officer resolved a disputed issue of fact at issue in the proceeding; and (3) the prisoner had an adequate opportunity to litigate the factual dispute. *Id.* at 259 (citing *Peterson v. Johnson*, 714 F.3d 905, 911–13 (6th Cir. 2013)). If these requirements are met, a court "must give the agency's finding of fact the same preclusive effect it would be given in state courts." *Id.* Here, Defendant Conklin has shown that all of the requirements for affording preclusive effect to the hearing officer's findings of fact are satisfied. A Class I misconduct hearing satisfies the first requirement, and findings rendered therein would be given preclusive effect by the Michigan courts. *Peterson*, 714 F.3d at 912–14. In addition, the Misconduct Hearing Report shows that the issues of whether Plaintiff engaged in threatening behavior and disregarded a direct order were the central issues in the hearing. Finally, Plaintiff was afforded an adequate opportunity to contest the charges against him. (ECF No. 40-3 at PageID.246–47.) Accordingly, the hearing officer's findings should be given preclusive effect. *See Mays v. Perala*, No. 2:17-cv-95, 2019 WL 4609928, at *3–4 (W.D. Mich. Aug. 5, 2019) (giving preclusive effect to preclude excessive force claim).

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations that occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Punishment that is without penological justification or involves the unnecessary and wanton infliction of pain also violates the Eighth Amendment's proscriptions. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). In other words, the Eighth Amendment prohibits "the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 183 (1976).

The Supreme Court has held that, "whenever guards use force to keep order," the standards set forth in *Whitley v. Albers*, 475 U.S. 312 (1986), should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7. In determining whether the use of force is wanton and unnecessary, a court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any effort made to temper the severity of the forceful response. *Id.* (citing *Whitley*, 475 U.S. at 321). In *Wilkins v. Gaddy*, 559 U.S. 34 (2010), the Supreme Court affirmed that the "core judicial inquiry" is "not whether a certain quantum of injury was sustained." *Id.* at 37 (quoting *Hudson*, 503 U.S. at 7). The Court noted, though, that the degree of injury is still relevant to the inquiry, as it may shed some light on the amount of force used, but "[a]n inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id.* at 37-38 (quoting *Hudson*, 503 U.S. at 9).

It is well established that the use of chemical spray is a constitutionally-permissible application of force when used to restore order or to gain an inmate's compliance. *See Jennings v. Mitchell*, 93 F. App'x at 725; *White v. Fowler*, No. 88-2216, 1989 WL 88479, at *1 (6th Cir. Aug. 8, 1989) (affirming grant of summary judgment to corrections officer who used chemical spray on the plaintiff in order to restore discipline and security on a prison bus). Here, the hearing officer's findings that Plaintiff threatened staff and refused to comply with orders establish that Defendant Conklin reasonably used chemical spray to control Plaintiff. *See Brown v. Perez*, No. 16-2558, 2017 WL 3378994, at *2 (6th Cir. Apr. 17, 2017) (stating that "the use of a chemical

agent does not constitute malicious or sadistic punishment in violation of the Eighth Amendment if its use is reasonably necessary to subdue a noncompliant prisoner").

Accordingly, Plaintiff fails to establish an Eighth Amendment violation.

## CONCLUSION

For the reasons set forth above, I recommend that the Court **grant** Defendant's Motion for Summary Judgment (ECF No. 54) and dismiss Plaintiff's amended complaint **with prejudice**.

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Dated: July 10, 2020                                  /s/ Sally J. Berens
                                                     SALLY J. BERENS
                                                     U.S. Magistrate Judge